IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 21-31087 |
| | § | |
| MAGELLAN E & P HOLDINGS, INC., | § | |
| | § | |
| Debtor. | § | CHAPTER 7 |
| | § | |
| RONALD J. SOMMERS, TRUSTEE | § | |
| | § | |
| Plaintiff, | § | ADV. PROC. NO. |
| | § | |
| v. | § | |
| | § | |
| BONIFACE MADUBUNYI | § | |
| | § | |
| Defendant. | § | |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Ronald J. Sommers, Chapter 7 Trustee ("Trustee") for the Estate of Magellan E & P Holdings, Inc. ("Estate"), files this complaint ("Complaint") to (i) avoid and recover preferential transfers made by Magellan E & P Holdings, Inc. ("Debtor") to or for the benefit of Boniface Madubunyi ("Defendant") pursuant to sections 547 and 550 of title 11 of the United States Code ("Bankruptcy Code"), (ii) avoid and recover fraudulent transfers made by Debtor to or for the benefit of Defendant pursuant to sections 544 and 550 of the Bankruptcy Code as well as the Texas Uniform Fraudulent Transfer Act ("TUFTA"), (iii) avoid and recover fraudulent transfers made by Debtor to or for the benefit of Defendant pursuant to sections 548 and 550 of the Bankruptcy Code, (iv) disallow Defendant's claims in the above-captioned bankruptcy case pursuant to 11 U.S.C. §502, and (v) recharacterize Defendant's claims in the above-captioned bankruptcy case pursuant to 11 U.S.C. §502, and in support thereof, respectfully represents as follows:

1

## NATURE OF THE PROCEEDING

1. The Estate seeks entry of a judgment against Defendant: (i) avoiding the Preferential Transfers and Fraudulent Transfers (as defined herein); (ii) directing Defendant to pay Estate an amount to be determined at trial that is not less than the amount of the Transfers (as defined herein), plus interest, attorneys' fees, and costs, pursuant to Sections 548 and 550(a) of the Bankruptcy Code and TUFTA; and (iii) pending such payment, disallowing all claims of Defendant against the Estate, pursuant to Section 502(d) of the Bankruptcy Code and otherwise.

## JURISDICTION AND VENUE

2. This adversary proceeding relates to the Chapter 7 case of Debtor, which case is pending the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"), under Case No. 21-31087 (the "Bankruptcy Case").

3. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334(b).

4. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B), (F), (H) and (O).

5. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

6. The Estate consents to entry of final orders and judgments by the Court in this adversary proceeding, regardless of whether it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

7. On March 30, 2021 (the "Petition Date"), Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code in the Court, which case is pending. On March 31, 2021, the Trustee was appointed as Chapter 7 Trustee of the Debtor's Estate. This adversary

proceeding is part of the Trustee's continuing obligation to recover assets for the benefit of the Debtor's Estate.

8. Defendant is an individual that can be served with process by U.S. mail upon his counsel, Edward L. Ripley and Josh Judd, Andrews Myers, 1885 Saint James Place, Suite 1500, Houston, TX 77056, pursuant to a letter from them to counsel dated June 9, 2022.

## FACTUAL BACKGROUND

9. The Trustee and his professionals have conducted an investigation of the Debtor's books and records and related financial documents for the purpose of determining what claims or causes of action are available to the Estate. Among other things, the Trustee and his professionals analyzed the transfers of the Debtor during the one-year prior to the bankruptcy filing ("Preference Period").

10. Based on a review of the Debtor's books and records, together with the facts and circumstances surrounding the filing of the Bankruptcy Case, the Trustee alleges, on information and belief, that during the Preference Period and for many years prior to the Petition Date, the Debtor was insolvent.

11. The Debtor's books and records reflect that during the Preference Period Debtor transferred money to Defendant, which transfers are identified on **Exhibit A** attached hereto and incorporated herein by reference (collectively, the "Preferential Transfers") and that, on information and belief, there are no §547(c) defenses thereto.

12. The Debtor's books and records reflect that during the four years prior to the Petition Date ("Fraudulent Transfer Period") Debtor transferred money to Defendant as shown on **Exhibit B** attached hereto and incorporated herein by reference (collectively, the "Fraudulent Transfers"). Likewise, during the two years prior to the Petition Date ("548 Fraudulent Transfer Period"), Debtor transferred money to Defendant as shown on **Exhibit C** attached hereto and incorporated herein by

reference (collectively, the "548 Fraudulent Transfers"). The 548 Fraudulent Transfers are a subset of the Fraudulent Transfers.

## CLAIMS FOR RELIEF

### COUNT 1
**(Avoidance of Preferential Transfers from Debtor to Defendant Pursuant to 11 U.S.C. § 547(b))**

13. The Trustee repeats and realleges all allegations contained in paragraph 1 through 12 above as if fully set forth herein.

14. Defendant is an insider of the Debtor pursuant to § 101(31) of the Bankruptcy Code.

15. During the Preference Period, Debtor made, or caused to be made, transfers of an interest of Debtor in property to, or for the benefit of, Defendant, which transfers are listed on **Exhibit A**.

16. Debtor made, or caused to be made, the Preferential Transfers on account of antecedent debt owed by Debtor to Defendant.

17. At the time of the Preferential Transfers, Debtor was insolvent.

18. Debtor is also entitled to the presumption of insolvency pursuant to Section 547(f) of the Bankruptcy Code.

19. The Preferential Transfers enabled Defendant to receive more than Defendant would receive if: (a) Debtor's bankruptcy case was administered under chapter 7 of the Bankruptcy Code; (b) the Preferential Transfers had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

20. At no time relevant hereto did Defendant maintain a lien on Debtor's assets or otherwise hold a valid security interest in the Debtor's assets from which Debtor was paid.

21. The Preferential Transfers diminished the value of Debtor's bankruptcy estate.

22. Defendant was the initial transferee of the Preferential Transfers, or the person for whose benefit the Preferential Transfers were made.

23. The Preferential Transfers are avoidable, and the Estate is entitled to a judgment against the Defendant avoiding the Preferential Transfers pursuant to 11 U.S.C. §547(b).

24. The Trustee respectfully requests this Court enter a judgment against the Defendant: (i) finding that the Preferential Transfers are preferential and therefore avoidable pursuant to 11 U.S.C. §547(b); (ii) avoiding the Preferential Transfers; (iii) granting costs and pre-and post-judgment interest; and (iv) granting any other and further relief as the Court determined is just and appropriate under the circumstances.

## COUNT II
### (Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550(a))

25. The Trustee repeats and realleges all allegations contained in paragraphs 1 through 24 above as if fully set forth herein.

26. The Trustee is entitled to avoid the Preferential Transfers pursuant to Section 547 of the Bankruptcy Code.

27. Defendant was the initial transferee of the Preferential Transfers, the immediate or mediate transferee of such initial transferee, or the person for whose benefit the Preferential Transfers were made.

28. Pursuant to Section 550(a) of the Bankruptcy Code, the Trustee is entitled to recover from Defendant an amount to be determined at trial that is no less than the total amount of the Preferential Transfers, plus interest thereon to the date of payment, and costs.

29. The Trustee respectfully requests this Court to enter a judgment against the Defendant: (i) allowing the Trustee to recover from Defendant two hundred twenty five thousand dollars and zero cents ($225,000.00), which equals the full value of the Preferential Transfers, for the

benefit of the Estate; (ii) awarding pre-judgment and post-judgment interest on the Preferential Transfers at the maximum legal rate; (iii) awarding costs, and (iv) granting any other and further relief as the Court determines is just and appropriate under the circumstances.

## COUNT III
### (Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544 and 550(a) and TUFTA)

30. The Trustee repeats and realleges all allegations contained in paragraphs 1 through 29 above as if fully set forth herein.

31. Defendant was well aware that Debtor was insolvent and could not afford to pay Defendant. Defendant made or caused to be made the Fraudulent Transfers in the amount of $1,710,214.82 to or on behalf of Defendant during the four years preceding the Petition Date, which are listed on **Exhibit B**.

32. Pleading in the alternative, on information and belief, the Fraudulent Transfers were made with actual intent to hinder, delay, or defraud any creditor of the Debtor. In addition, the Fraudulent Transfers were made to an Insider, as defined in TUFTA, the Fraudulent Transfers were concealed, the value the Debtor received from the Fraudulent Transfers was not reasonably equivalent to the value of the assets transferred to Defendant, the Debtor was insolvent at the time of the Fraudulent Transfers, the transfers occurred shortly before a substantial debt was incurred, and the Debtor transferred the essential assets of the business to a purported lienor who was an Insider. Other statutory and non-statutory badges of fraud may also exist.

33. Pleading in the alternative, the Fraudulent Transfers were made without receiving a reasonably equivalent value in exchange for the transfers, and the Debtor: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or

reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

34. Pleading in the alternative, the Fraudulent Transfers were made without receiving a reasonably equivalent value in exchange for the transfers, and the Debtor was insolvent at that time or the Debtor became insolvent as a result of the transfers.

35. Under Tex. Bus. & Com. Code § 24.008 of TUFTA, and under §§ 544 and 550 of the Bankruptcy Code, the Trustee is entitled to avoidance of the Fraudulent Transfers and a judgment in the amount of the Fraudulent Transfers, plus costs. The Trustee is also entitled to recover his attorneys' fees and expenses pursuant to Tex. Bus. & Com. Code § 24.013 of TUFTA. The Trustee is entitled to prejudgment interest and post-judgment interest on all of the foregoing.

## COUNT IV
### (Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548 and 550(a))

36. The Trustee repeats and realleges all allegations contained in paragraphs 1 through 35 above as if fully set forth herein.

37. Defendant was well aware that Debtor could not afford to pay Defendant and was insolvent. Defendant made or caused to be made the 548 Fraudulent Transfers in the amount of $844,375.78 to or on behalf of Defendant during the two years preceding the Petition Date, which are listed on **Exhibit C**.

38. Pleading in the alternative, the Debtor made the 548 Fraudulent Transfers within two years of the Petition Date and with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfers were made, indebted.

39. Pleading in the alternative, the Debtor made the 548 Fraudulent Transfers within two years of the Petition Date and (i) received less than a reasonably equivalent value in exchange for such transfers; and (ii) (a) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (b) was engaged in business or

a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; (c) intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured; or (d) made such transfers to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

40. Under §§ 548 and 550 of the Bankruptcy Code, the Trustee is entitled to avoidance of the 548 Fraudulent Transfers and a judgment in the amount of the 548 Fraudulent Transfers, plus costs, prejudgment interest and post-judgment interest.

## COUNT V
### (Disallowance of Defendant's Claims Pursuant to 11 U.S.C. § 502(d))

41. The Trustee repeats and realleges the allegations contained in paragraphs 1 through 40 above as if fully set forth herein.

42. Defendant has filed Proof of Claim No. 12 in the Bankruptcy Case in the amount of $120,223,554.70. The Debtor also identified Defendant as a claimant holding a $113,600,000 secured claim in Schedule D of Debtor's schedules (collectively, the "Claims").

43. Defendant is an entity from which property is recoverable under Section 550 of the Bankruptcy Code.

44. Defendant was the initial transferee of the Preferential Transfers, the Fraudulent Transfers and the 548 Fraudulent Transfers, the immediate or mediate transferee of such initial transferee, or the person for whose benefit the transfers were made.

45. Defendant has not paid the Estate the amount of the transfers, or turned over such property to the Estate, for which Defendant is liable under Section 550 of the Bankruptcy Code.

46. Pursuant to § 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignees, against the Estate, must be disallowed until such time as Defendant pays to the Estate all amounts sought herein.

## COUNT VI
### (Recharacterization of Defendant's Claims Pursuant to 11 U.S.C. § 502(d))

47. The Trustee repeats and realleges the allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

48. The Defendant's claims are not secured claims. They are equity in the Debtor.

49. From its inception, Debtor had a negative balance sheet and was insolvent and undercapitalized. Defendant funded the capital needs of the Debtor from inception. From 2005 through April 30, 2006, Defendant had allegedly advanced $11,127,850 to the Debtor. Effective as of April 30, 2006, the Debtor and Defendant entered into a Loan Agreement (the "<u>Initial Loan</u>")[1] under which the parties recharacterized the prior capital advances as a loan. Thereafter, Defendant treated, on the Debtor's books, these capital infusions as loans accruing 12.5% per annum interest and 18% interest after an event of default. In addition to the 18% interest, the Initial Loan required that a usurious "Fee" of 25% of the principal also be paid upon any prepayment.

50. The maturity date of the Initial Loan was March 30, 2008. If interest was not paid quarterly, or all interest and principal not paid by March 30, 2008, or the Debtor was insolvent, then the Initial Loan contained an automatic acceleration clause. The Debtor was at all times insolvent.

51. The Initial Loan provides that "No advances will be made under this Agreement after December 1, 2006." Contrary to these terms, Defendant purportedly advanced sums to the Debtor numerous times after December 1, 2006.

52. The Initial Loan was not paid down or paid back by March 30, 2008. By October 2008, Debtor's "debt" to Defendant was over $15 million and the Debtor had no way to pay it. Effective on October 17, 2008, the Debtor and Defendant entered into the following:

   a. Credit Agreement;

---

[1] The Trustee does not concede this Initial Loan was a loan, but to make the facts easier to understand and to be consistent with the nomenclature of the parties' documents, the Trustee will refer to this loan as the Initial Loan.

9

b. Promissory Note in the amount of $15,033,679.79 (the "Additional Loan") with schedule of monies advanced equal to that total (the "Note");

c. Mortgage, Deed of Trust, Assignment of Production, Security Agreement and Financing Statement ("Deed of Trust"); and

d. Convertible Promissory Note in the amount of $2,000,000 ("Convertible Note"). There had been a UCC financing statement filed at the Texas Secretary of State in 2006, in connection with the Initial Loan, but that financing statement was never renewed, so it was automatically terminated in five years, i.e., in 2011.

53. The Credit Agreement governs the Initial Loan, the Additional Loan, and the Convertible Note. The Credit Agreement recites that "The Initial Loan is currently in default." Under the Credit Agreement, the Maturity Date for all three loans was, if not paid sooner, October 1, 2012, "when the Borrower shall to the extent that it has not already repaid the outstanding aggregate principal amounts of the Initial Loan and Additional Loan and all accrued interest thereon repay any amount thereof which remains outstanding." Further, the Credit Agreement provides for automatic acceleration of all amounts due upon any Event of Default, as follows:

> an amount equal to the then outstanding principal balance shall be deemed to be forthwith due and owing by Borrower to the Lender as of the date of any such occurrence and Borrower's obligation to pay such amount shall be absolute and unconditional, and, to the fullest extent permitted by applicable law, shall not be subject to any defense or be affected by a right of set-off, counterclaim or recoupment which Borrower may now or hereafter have against Lender or any other Person for any reason whatsoever.

54. The Credit Agreement also provides that the Maturity Date of the Convertible Note is "in accordance with the terms of the Convertible Note." In that regard, the Convertible Note provides:

> The principal of this Note shall mature and be due and payable at the earliest of (a) the authorization by the Company of the Share Issuance (as defined in Section 1); or (b) on demand made at any time on or after the date that is 2 months after the date hereof in writing to the Company by the Holder.
>
> All accrued and unpaid interest shall be due and payable immediately on maturity of the principal of this Note.

55. The interest rates under the Credit Agreement were 12%, or 18% after an Event of Default. Accrued interest was to have been paid quarterly but was almost never paid.

56. The Credit Agreement provided that if there were any additional advances from Defendant after October 17, 2008 (the date of the Credit Agreement), then they were to be documented in the form of promissory notes. There were numerous additional advances after October 17, 2008 through May 23, 2012, according to records produced by Defendant, but no promissory notes were entered into as required.

57. Importantly, the 2008 Credit Agreement required the Debtor to pay Defendant "not less than 85% of all net production revenues received by the Borrower from the Borrower's existing Oil and Gas Properties." The Debtor was not able to make these payments and both principal and interest on loans increased over time.

58. For the foregoing reasons and many others, the alleged debt held by Defendant should be recharacterized as equity in the Debtor.

59. The Trustee respectfully request this Court enter a judgment against the Defendant disallowing any Claims pursuant to Section 502(d) of the Bankruptcy Code and granting any other and further relief as the Court determines is just and appropriate under the circumstances.

## RESERVATION OF RIGHTS

60. The Trustee reserves the right to bring all other claims or causes of action that the Estate may have against the Defendant, on any and all grounds, as allowed under the Bankruptcy Code, or applicable law, or in equity.

61. This Complaint is not intended to be, nor should it be construed as, a waiver of the Trustee's right to object to the Claims for any reason.

62. The Trustee reserves the right to amend this Complaint as new information becomes known to the Trustee at any time during the adversary proceeding, through formal discovery or

otherwise, to include such information and/or assertions with respect to the Preferential Transfers or additional transfers if found to the Defendant; revise Defendant's name; add additional defendants and/or additional causes of action including, but not limited to, those pursuant to 11 U.S.C. §§ 542, 544, 547, 548 and 550, (collectively, the "Amendments"), and that any and all such Amendments relate back to the date of this Complaint.

**WHEREFORE,** the Trustee respectfully requests that the Court enter judgment against Defendant:

(a) Avoiding and recovering Preferential Transfers pursuant to 11 U.S.C. §§ 547 and 550;

(b) Granting judgment in favor of the Trustee and directing Defendant to pay the Estate an amount to be determined at trial that is no less than the amount of the Preferential Transfers, plus costs, prejudgment interest, and post-judgment interest pursuant to 11 U.S.C. § 550;

(c) Granting judgment in favor of the Trustee and directing Defendant to pay the Estate an amount to be determined at trial that is no less than the amount of the Fraudulent Transfers, plus costs, attorneys' fees, prejudgment interest, and post-judgment interest, pursuant to 11 U.S.C. § 550 and Tex. Bus. & Com. Code Chapter 24;

(d) Granting judgment in favor of the Trustee and directing Defendant to pay the Estate an amount to be determined at trial that is no less than the amount of the 548 Fraudulent Transfers, plus costs, prejudgment interest, and post-judgment interest, pursuant to 11 U.S.C. §§ 548 and 550;

(e) Disallowing the Claims pursuant to 11 U.S.C. § 502(d);

(f) Recharacterizing Defendant's debt as equity in the Debtor pursuant to 11 U.S.C. § 502(d);

(g) Awarding costs of court;

(h) Awarding pre-judgment and post-judgment interest at the maximum legal rate; and

(i) Granting any other and further relief that is appropriate under the circumstances.

Date: August 22, 2022	Respectfully submitted,

SPENCE, DESENBERG & LEE, PLLC

By: /s/ Ross Spence
Ross Spence
State Bar No. 18918400
Email: ross@sdllaw.com
Justin W. Safady
State Bar No. 24098914
Email: justin@sdllaw.com
1770 St. James Place, Suite 625
Houston, TX 77056
(713) 275-8440 – Main Telephone
(713) 275-8445 – Fax

**ATTORNEYS FOR
RONALD J. SOMMERS, TRUSTEE**