## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 21-31087 |
| | § | |
| MAGELLAN E & P HOLDINGS, | § | |
| INC., | § | |
| | § | |
| Debtor. | § | CHAPTER 7 |

### TRUSTEE'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF HARNEY PARTNERS AND KAREN NICOLAOU, CPA AS AN EXPERT WITNESS

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

HEARING ON THIS MATTER WILL TAKE PLACE ON January 18, 2023, AT 1:30 PM. VIA AUDIO AND VIDEO PARTICIPATION. FOR AUDIO, PLEASE CALL 832.917.1510 AND ENTER CONFERENCE CODE 174086. VIDEO PARTICIPATION IS THROUGH GO TO MEETING AT FOLLOWS: HTTPS://WWW.GOTOMEET.ME/JUDGENORMAN

TO THE HONORABLE JEFFREY P. NORMAN, UNITED STATES BANKRUPTCY JUDGE:

Ronald J. Sommers, Chapter 7 Trustee ("Trustee") of Magellan E & P Holdings, Inc. ("Magellan"), files this application ("Application") for the entry of an order, under Sections 327(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 ("Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of bankruptcy Procedure ("Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of Texas ("Local Rules"), authorizing the employment and retention of Harney Partners and Karen Nicolaou, CPA ("Nicolaou") as an expert witness. In support of this Application, the Trustee relies on the Declaration of Karen Nicolaou dated November 22, 2022 and attached here to as **Exhibit A** and incorporated herein for all purposes.  In further support of this Application, the Trustee respectfully states as follows:

## JURISDICTION AND VENUE

1.        This Court has jurisdiction over this application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Trustee's case in this district is proper pursuant to 28 U.S.C. § 1408. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). This Court has the constitutional authority to enter a final order on this application, and if not, the Trustee consents to entry of a final order.

2.        On March 30, 2021 Magellan filed a voluntary petition under Chapter 7 of title 11 of the United States Code. Ronald J. Sommers was appointed as Chapter 7 Trustee on this matter.

## RELIEF REQUESTED

3.        The Trustee seeks entry of an order authorizing the Trustee to employ and retain HMP Advisory Holdings, LLC dba Harney Partners and Karen Nicolaou, CPA, a principal of that firm, as an accounting expert during this chapter 11 case pursuant to and in accordance with the engagement agreement, a copy of which is attached as **Exhibit B** and incorporated herein for all purposes.  A copy of Ms. Nicolaou's resume is attached hereto as **Exhibit C.**

## SCOPE OF SERVICES AND QUALIFICATIONS

4.     The Trustee has investigated and brought a number of adversary proceedings for recovery of preference transfers as well as a fraudulent transfer claim against insider Boniface Madubunyi. Most of such matters have been settled but some are left to be litigated. It will be necessary to obtain expert accounting analysis and testimony to prove certain preference and fraudulent transfer elements and to negate certain affirmative defenses. Harney Partners and Karen Nicolaou are being engaged to review the documents in this case and other information and provide opinions relating to the foregoing matters.

5.     Karen Nicolaou is a Certified Public Accountant licensed to practice in the State of Texas.  She has been practicing for decades and given testimony in a number of proceedings.  She is well-qualified to assess and opine on the elements of preferences and fraudulent transfers and any assertable defenses thereto. Harney Partners is a firm of professionals with similar qualifications and experience. Harney Partners has the support personnel and resources to assist Karen Nicolau in performing the work efficiently and at a lower blended rate.

6.     Based on the foregoing, the Trustee seeks to employ Harney Partners and Karen Nicolaou as an expert witness effective as of November 30, 2022, ***nunc pro tunc.***

7.     The Trustee believes that the services will not duplicate the services that other professionals will be providing to the Trustee in this case.

## PROFESSIONAL COMPENSATION

8.      Section 327(a) of the Bankruptcy Code authorizes the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis. *See* 11 U.S.C. § 327(a).

9.      The Trustee, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, and any applicable orders in this case, and subject to approval via final fee application,

proposes to employ Harney Partners and Karen Nicolaou. As of the date of this application, Karen

Nicolaou does not hold a claim against the estate. The compensation to be paid to Karen Nicolaou

shall be in accordance with normal billing practices for services rendered and out-of- pocket

expenses incurred on the Trustee's behalf and pursuant to the engagement letter agreement. Karen

Nicolaou's hourly rate will be $500.00 per hour. Karen Nicolaou will be the lead professional in

charge of this engagement but may be assisted by other personnel at Harney Partners, whose

hourly rates are below:

|  |  |
|---|---|
| Karen Nicolaou, Managing Director | $500 / hour |
| Frank Cottrell, Director | $400 / hour |
| Wade Horst, Manager | $350 / hour |

If other personnel of Harney Partners are used, the rates are:

|  |  |
|---|---|
| President / EVP | $500 - $600 / hour |
| Managing Director | $400 - $500 / hour |
| Senior Manager / Director | $300 - $400 / hour |
| Manager | $250 - $350 / hour |
| Sr. Consultant | $175 - $300 / hour |
| Support Staff | $80 - $200  / hour |

10.     As a material part of the consideration for which Harney Partners and Karen

Nicolaou have agreed to provide the services to the Trustee, the Trustee and Karen Nicolaou have

agreed that any liability, if any, for any damages are capped at to the amount of earned fees by

Harney Partners in this bankruptcy case.

11.     Karen Nicolaou and Harney Partners understand that allowance of fees and

expenses is subject to  this Court's approval.

## **DISINTERESTEDNESS**

12.     The Trustee seeks retention and employment of Harney Partners and Karen

Nicolaou as an expert accounting witness pursuant to Section 327(a) of the Bankruptcy Code.

Section 327(a) of the Bankruptcy Code empowers a trustee, with the Court's approval, to employ

professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as: (a) someone that is not a creditor, equity security holder or insider; (b) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

13.      Likewise, Rule 2014(a) requires that an application for retention include facts showing the necessity of employment, the name of the firm to be employed, the reasons for selection, the professional services to be rendered, any proposed arrangement for compensation, and any connections  with the debtor, creditors, any party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

14.      To the best of the Trustee's knowledge and as disclosed in Karen Nicolaou's Affidavit, neither Nicolaou nor Harney Partners hold or represent an interest adverse to the Debtor or the Debtor's estate with respect to this bankruptcy case.

15.      Karen Nicolaou and Harney Partners will continue to watch their business relations to ensure the no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Nicolaou and Harney Partners will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

16.      Except as set forth herein, Karen Nicolaou and the other professionals of Harney Partners (a) do not have any connection with the debtor, any affiliates, their creditors, any other

party in interest, the United States Trustee or any person employed in the office of the same, or any judge in the United States Bankruptcy Court for the Southern District of Texas or any person employed in the office of the same except that professionals at Harney Partners know certain judges socially; (b) are "disinterested persons," as that term is defined in the Bankruptcy Code Section 101(14), as modified by Bankruptcy Code Section 1107(b); and (c) do not hold or represent any interest adverse to the debtor's estate.

17.     Karen Nicolaou and others at Harney Partners have connections through the Turnaround Management Association, the state Bankruptcy Bar, various conferences, and other professional and social events and social media to employees of the United State Trustee, judges, court staff, counsel and other practitioners.  None of these connections is known to have given rise to any conflict, potential conflict, or disinterestedness.

18.     Neither Harney Partners nor its professionals:

a.     Are creditors, equity security holders or insiders of the Debtor;

b.     Are or have been, within two years before the date of the filing of the petition, directors, officers, or employees of the Debtor; and

c.     Have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or for any other reason.

19.     The Trustee submits that the engagement and retention of Karen Nicolaou on the terms and conditions set forth herein should be approved because it is necessary and in the best interest of the Debtor, its estate, and the estate's creditors.

## NOTICE

20.     Pursuant to Bankruptcy Local Rule 2014-1 and 9003-1, notice of this Application will be provided to (i) the Office of the United States Trustee for the Southern District

of Texas.

### **PRAYER**

WHEREFORE, the Debtor respectfully requests that this Court grant the relief sought by this Application, approve the engagement of Harney Partners and Karen Nicolaou as an expert witness, and grant such other relief as is just and proper.

Dated: December 9, 2022

Respectfully submitted,

SPENCE, DESENBERG & LEE, PLLC

By: _____/s/ Ross Spence_____
Ross Spence
State Bar No. 18918400
ross@sdllaw.com
Justin W. Safady
State Bar No. 24098914
justin@sdllaw.com
1770 St. James Place, Suite 625
Houston, Texas 77056
Telephone: (713) 275-8440
Facsimile: (713) 275-8445

**ATTORNEYS FOR**
**RONALD J. SOMMERS, TRUSTEE**

**BANKRUPTCY RULE 9034 CERTIFICATE OF SERVICE**
**UPON UNITED STATES TRUSTEE**

I hereby certify that, pursuant to Bankruptcy Rule 9034, this instrument was served upon the United States Trustee via the court's CM/ECF system and first-class mail, postage prepaid to 515 Rusk Ave., #3516, Houston, TX 77002, on the 7th day of December 2022.

___/s/ Ross Spence_____
Ross Spence

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 7th day of December, a true and correct copy of the foregoing document, was duly served as follows:

(i)      Electronically to all persons who have entered an appearance in this case by means of the Court's CM/ECF System; and

(ii)     Via First Class Mail, properly addressed and postage prepaid, upon all parties listed on the attached Service List, including the United States Trustee.

*/s/ Ross Spence*
Ross Spence

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 21-31087** |
| | § | |
| **MAGELLAN E & P HOLDINGS,** | § | |
| **INC.,** | § | |
| | § | |
| **Debtor.** | § | **CHAPTER 7** |

**EXHIBIT**
**A**

**KAREN NICOLAOU DECLARATION IN SUPPORT OF TRUSTEE'S**
**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF HARNEY PARTNERS AND**
**KAREN NICOLAOU, CPA AS AN EXPERT WITNESS**

I, Karen Nicolaou, CPA, declare and state under penalty of perjury pursuant to 28 U.S.C. § 1747 that the following is true and correct to the best of my personal knowledge:

1. I am a Certified Public Accountant ("CPA") licensed to practice as such in the State of Texas. I have been a CPA for more than 30 years. I have been active in the restructuring industry and I have served as financial advisor to distressed companies and parties in bankruptcy.

2. I am a graduate of The University of Texas at Austin with a Batchelor's degree in Accounting.

3. I have worked in the accounting and financial consulting fields since 1981. I have often been engaged by legal counsel to serve as an expert witness on a broad range of financial and accounting matters and have testified in Federal and State courts around the country as well as in arbitrations.

4. I serve as Managing Director of HMP Advisory Holdings, LLC dba Harney Partners.

5. It is my understanding that I am being engaged in this matter to provide expert accounting opinions related to preference and fraudulent transfer avoidance litigation

brought by the Trustee against various transferees of the bankruptcy debtor Magellan E&P Holdings, Inc. We will evaluate the elements of the claims and any affirmative defenses asserted by the transferees.

6. My hourly billing rate is $500.00 per hour. To keep the average billing rate down, I will utilize other personnel in Harney Partners, their hourly rates are as follows:

|  |  |
|---|---|
| Karen Nicolaou, Managing Director | $500 / hour |
| Frank Cottrell, Director | $400 / hour |
| Wade Horst, Manager | $350 / hour |

7. If other personnel of Harney Partners are used, the rates are:

|  |  |
|---|---|
| President / EVP | $500 - $600 / hour |
| Managing Director | $400 - $500 / hour |
| Senior Manager / Director | $300 - $400 / hour |
| Manager | $250 - $350 / hour |
| Sr. Consultant | $175 - $300 / hour |
| Support Staff | $80 - $200 / hour |

8. Harney Partners and I understand that allowance of our fees and expenses is subject to the Court's approval.

## DISINTERESTEDNESS

8. To the best of my knowledge, neither I nor Harney Partners holds or represents any interest adverse to the debtor or the debtor's estate.

9. I and Harney Partners will continue to monitor our business relationships to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, we will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

10. Except as set forth herein, I and the other professionals of Harney Partners (a) do not have any connection with the debtor, any affiliates, their creditors, or any equity owner, or any other party in interest, the United States Trustee or any person employed in the office of the same, or any judge in the United States Bankruptcy Court for the Southern District

of Texas or any person employed in the office of the same except that I and other professionals at Harney Partners know certain judges socially and I have discussed with one judge a potential CLE training program; (b) are "disinterested persons," as that term is defined in the Bankruptcy Code Section 101(14), as modified by Bankruptcy Code Section 1107(b); and (c) do not hold or represent any interest adverse to the debtor estate.

11. Generally, I and others at Harney Partners have connections through the Turnaround Management Association, the state Bankruptcy Bar, various conferences, and other professional and social events and social media to employees of the United State Trustee, judges, court staff, counsel and other practitioners. None of these connections is known to have given rise to any conflict, potential conflict, or negation of disinterestedness.

12. I further represent that neither I nor Harney Partners nor its professionals:

> a. Are creditors, equity security holders or insiders of the Debtor;
>
> b. Are or have been, within two years before the date of the filing of the petition, directors, officers, or employees of the Debtor; or
>
> c. Have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or for any other reason.

The foregoing constitutes my statement pursuant to Bankruptcy Code sections 327 (e), 329, and 504 and Bankruptcy 2014(a) and 2016(b). Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

X _____
Karen Nicolaou, CPA
Managing Director, Harney Partners

Dated: December 8, 2022

3



**PERSONAL & CONFIDENTIAL**

November 30, 2022

Mr. Ron Sommers, Trustee
c/o Mr. Ross Spence
Spence, Desenberg & Lee, PLLC
1770 St James Place Suite 625
Houston, Texas 77056

In re: Magellan E & P Holdings, Inc. – Mr. Ronald Sommers, Chapter 7 Trustee

<div style="border:1px solid black; text-align:center;">

**EXHIBIT
B**

</div>

Dear Ross and Ron:

Thank you for selecting HMP Advisory Holdings, LLC, dba Harney Partners ("HP"), to provide consulting expert and litigation support services to Spence, Desenberg & Lee, PLLC, ("You", "Client") in your capacity as counsel to Mr. Ronald Sommers, Trustee in the Chapter 7 Bankruptcy Case ("Bankruptcy Case") *In re: Magellan E&P Holdings, Inc.* ("Debtor"), case number 21-031087, pending in the United States Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court"). We appreciate your confidence in HP and want to ensure that we exceed your expectations regarding the services we will provide. This letter agreement ("Agreement") will confirm Client's agreement to engage HP for the purpose of providing consulting expert and litigation support services on behalf of Client, as provided below.

**SERVICES AND SCOPE**

It is anticipated that HP may provide the following consulting expert and litigation support services to You, as follows (the "Services"):

- Assist You in the investigation and pursuit of potential avoidable transfers owned by the Chapter 7 bankruptcy estate ("Transfers");
- Review and analysis of the financial information pertaining to the Debtor's Transactions, as referenced in the various Complaints which You have identified (the "Transactions")

If you decide to designate us as a testifying expert, the scope of work may expand to include the following services:

- Assist You to prepare for hearings, testimony, negotiations or meetings, and creation of supporting exhibits and motions, as required;
- Provide written expert report and / or expert witness testimony in support of potential adversary proceedings related to the Transactions, if required or requested to do so; and

In re: Magellan E & P Holdings, Inc.
Ronald Sommers, Chapter 7 Trustee
November 30, 2022
P a g e | 2

---

Perform such other services as may be agreed upon between the parties.

The Services to be provided by HP will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations and the scope of our engagement. As you know, the exercise of professional judgment requires an open dialogue. To provide you the best level of service, we will ask you to timely disclose all pertinent material information to us.

## TIMING

We are ready to commence work immediately.

## FEES

The standard hourly rates for HP professionals are:

| President / EVP | $500 - $600 / hour |
| Managing Director | $400 - $500 / hour |
| Senior Manager / Director | $300 - $400 / hour |
| Manager | $250 - $350 / hour |
| Sr. Consultant | $175 - $300 / hour |
| Support Staff | $80 - $200 / hour |

Karen Nicolaou will lead our team for this matter, with support from Frank Cottrell and Wade Horst. Additional resources may be added as needed to most efficiently complete our Services, with advance consent by Client. Our current rates are as follows:

| Karen Nicolaou, *Managing Director* | $500 / hour |
| Frank Cottrell, *Director* | $400 / hour |
| Wade Horst, *Manager* | $350 / hour |

HP determines additional staff rates based upon all relevant factors, which might include, for example, that staff's education, experience or expertise within an industry. Because these factors may evolve over time, HP may modify its hourly rate from time to time, but no more often than every 6 months.

## TERMS

This letter agreement incorporates the Standard Terms and Conditions set forth in the attached ***Exhibit "A."***

If a court determines that Karen Nicolaou or Harney Partners is not qualified to testify in this matter, such determination will not be deemed a breach of this Agreement; and the Client will remain liable for payment of fees and expenses as set forth in this Agreement.

In re: Magellan E & P Holdings, Inc.
Ronald Sommers, Chapter 7 Trustee
November 30, 2022
P a g e | 3

## APPROVAL

If this letter accurately represents the agreement between the parties, please sign as indicated below
and return a PDF copy to bpatterson@harneypartners.com. We will collect the original version from
you when we meet in person.

Both parties understand and acknowledge that HP will need to be hired as an estate professional and
that the terms of this Agreement and any compensation paid to HP under this Agreement have to be
approved by the Bankruptcy Court in the Debtor's bankruptcy case.

Again, thank you for the opportunity. We look forward to working with you.

> Sincerely,
>
> **HARNEY PARTNERS**
>
> By: _William R. Patterson_
> William R. Patterson
> *Executive Vice President*

ACCEPTED AND AGREED AS TO FORM AND CONTENT

Ronald J. Sommers, as Chapter 7 Trustee
For Magellan E&P Holdings, Inc.
By: _____            Date: __12 - 1 - 2022__
Ron Sommers

In re: Magellan E & P Holdings, Inc.
Ronald Sommers, Chapter 7 Trustee
November 30, 2022
P a g e | 4

## EXHIBIT "A"

### STANDARD TERMS AND CONDITIONS

1. **SERVICES**:

HMP Advisory Holdings, LLC, dba Harney Partners ("HP") will use reasonable efforts to perform the agreed-upon Services more fully described in the engagement letter to which these Standard Terms and Conditions are attached as **Exhibit "A."** The Client will provide HP with all resources (physical and human) reasonably requested by HP to enable HP to perform the Services.

2. **ACCESS TO CLIENT PERSONNEL AND INFORMATION AND CLIENT REPRESENTATION CONCERNING INFORMATION PROVIDED TO HP**:

   A. The Client will provide HP with full access to all Client books and records. Client authorizes HP directly to contact Client personnel, consultants, agents and other representatives (including those of the Client's attorneys subject to such safeguards as may be necessary to preserve applicable attorney-client privileged communications), and third parties as deemed necessary by HP in its sole business judgment regarding matters relevant to the Services.

   B. The Client recognizes and confirms that, in acting pursuant to this engagement, HP will be using information in reports and other information provided by others, including, without limitation, information provided by or on behalf of the Company and other third parties. HP does not assume responsibility for and may rely, without independent verification, on the accuracy and completeness of any such reports and information. The Client also represents and warrants to HP that except as disclosed to HP in writing, all information provided or made available to HP by the Client, its' directors, officers, employees, representatives, attorneys and agents at any time shall (to the best of the Client's knowledge: i) be complete and correct in all material respects, and ii) not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements not misleading in light of the circumstances under which such statements are made. Client agrees that it shall notify HP if it learns subsequently that any information provided or made available to HP in accordance with this Agreement is incorrect, inaccurate, or otherwise should not be relied upon.

   C. The services to the Client under this Agreement may include the preparation of recommendations, projections, and other forward-looking statements. The Client acknowledges that numerous factors may affect the Client's actual financial and operational results, and that these results may materially and adversely differ from the recommendations and projections prepared, in whole or in part, by HP. The Client acknowledges that in rendering its services under this Agreement, HP will be using and relying upon the information provided by Client, its directors, officers, employees, representatives and agents. Under any of the foregoing

In re: Magellan E & P Holdings, Inc.
Ronald Sommers, Chapter 7 Trustee
November 30, 2022
P a g e | 5

circumstances, the Client agrees that HP shall have no duty to verify independently the reliability, accuracy or completeness of such information. The Client also agrees that HP shall incur no liability to the Client or any individual or other entity that may arise if any such information proves to be unreliable, inaccurate or incomplete.

3. **FEES AND EXPENSES:**

    A.    HP will send weekly invoices to Client for all fees and expenses, and Client will pay to HP the amounts charged therein – *via wire transfer or ACH* – upon receipt. Expenses incurred by HP on behalf of the Client will be invoiced at the actual amount incurred and not marked up. All invoices are due upon receipt via ACH or wire transfer. All out-of-town travel time will be invoiced at 50% of such HP professional's applicable hourly billing rate.

    B.    In the event HP is requested or authorized by the Company or is required by government regulation, subpoena, or other legal process to produce HP's documents or HP's members, employees, agents, contractors, or representatives as witnesses with respect to HP's services for the Company, the Company will reimburse HP for its professional time and expenses at the current rates in effect at such time.

4. **NO THIRD-PARTY BENEFICIARIES:**

The Client acknowledges that all information, whether written or oral, created, prepared, or compiled by HP in connection with this Agreement is intended solely for the benefit and use of the Client, provided however, HP acknowledges and agrees that Client shall utilize HP's work in negotiations with Client's creditors. No other individual or entity shall be entitled to rely on such information for any purpose. Client agrees that such information shall not be reproduced, disseminated, quoted or referred to at any time or in any manner other than to the Client's board of directors/trustees, officers, employees, representatives, attorneys, and other agents who have a need to receive such information, except upon HP's prior written consent. Without limiting the foregoing, the Client shall not (and shall not authorize any other individual or entity to) use HP's name or make available to third parties any information created, prepared, or compiled by HP under this Agreement for any reason, including obtaining or extending credit, offering or setting securities or other assets, or in any representations to third parties without HP's prior written consent. It is also expressly agreed that notwithstanding the above restrictions upon the Client's dissemination and use of information and work product, HP shall have no responsibility or liability relating directly or indirectly to such disclosure (whether authorized or unauthorized) by the Client concerning any information created, prepared, or compiled, in whole or in part, by HP pursuant to this Agreement, which may be disclosed only after prior written approval by HP or as required by applicable laws, or regulatory or administrative process, including stock exchange rules. The foregoing provisions shall not be construed or interpreted to prohibit

In re: Magellan E & P Holdings, Inc.
Ronald Sommers, Chapter 7 Trustee
November 30, 2022
P a g e | 6

references to HP's engagement under this Agreement in required public filings or court documents.

5. **TERMINATION:**

Unless otherwise specified in this Agreement, the engagement can be terminated by either party effective upon one-week written notice to the other party, provided that upon any such termination by the Client, the Client pays to HP all amounts due and owing hereunder prior to the effective date of termination. Either party shall have the right to terminate this engagement immediately if the other party materially breaches this agreement. The terms of this Exhibit "A" shall survive any termination or expiration of this Agreement or the engagement.

6. **INDEPENDENT CONTRACTOR:**

    A.    HP is an independent contractor under this Agreement, and accordingly, this Agreement shall not be an employment agreement. No one on behalf of any HP Party (as defined below), nor any employees, agents, or independent contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of the Client, unless expressly agreed to in a writing signed by both Client and HP. As an independent contractor, HP will have exclusive control over the management and operation of HP, including hiring and paying the wages or other compensation of its personnel. Unless expressly provided otherwise in this Agreement, HP personnel that provide services to the Client under this Agreement may also provide services to other HP clients (past, present or future) in connection with unrelated matters. In addition, HP may utilize the services of qualified project employers, to assist HP with its performance of its services pursuant to this Agreement.

    B.    In rendering its services to Client hereunder, HP is not assuming any responsibility for the Client's underlying business decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any transaction. HP shall not make decisions on behalf of or instead of the Client. The management and decision making of the Client shall, at all times, remain with the board of directors or managers of the Client and its equity owners in accordance with their independent business judgment. HP and Client confirm that each will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice.

7. **NO FIDUCIARY RELATIONSHIP:**

Nothing in this Agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between: (a) the Client, including without limitation, the Client's

In re: Magellan E & P Holdings, Inc.
Ronald Sommers, Chapter 7 Trustee
November 30, 2022
P a g e | 7

---

directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, agents, or creditors, on the one hand: and (b) HP, HP's affiliates, and the respective directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, independent contractors, attorneys, agents, successors or assigns of HP or HP affiliates (all of the foregoing in this subpart (b) collectively, the "HP Parties," and each a "HP Party") on the other hand.

## 8. LIMITATION OF LIABILITY:

Even if the remedies provided for in this agreement fail of their essential purpose and even if HP has been advised of the possibility of the following damages, in no event shall any HP Party be liable to Client or to any other person or entity, under any equitable, common law, contractual, statutory, or other theory, for (i) any incidental, special, consequential, indirect, or punitive damages, (ii) any damages measured by lost profits, opportunities or goodwill, or (iii) any damages in excess of the fees paid by Client to HP during the six-month period immediately preceding HP's actual receipt of Client's first express, written assertion of such claim.

## 9. NON-SOLICITATION:

Unless otherwise set forth in this Agreement, during the term of this engagement and for 12 months thereafter, Client and any of its affiliated companies agree not to solicit any HP Party without HP's prior written consent, and HP agrees not to solicit Client's employees without Client's prior written consent. If an employee (or in the case of HP, any HP Party) of one party (the "First Employer") becomes employed or contracted by the other party (the "Second Employer"), and 180 days have not elapsed since such employee (or Affiliate) was last employed by or provided services as a contractor to the First Employer, then the Second Employer shall be conclusively deemed to have breached its obligations under this section. As liquidated damages for such a breach, the Second Employer shall pay the First Employer an amount equal to forty percent (40%) of the total cash compensation reasonably anticipated to be paid by the Second Employer to such employee or contractor during the first year of such employment or contract relationship with the Second Employer. For purposes of this calculation, the parties agree that such payment shall be due within 30 days after such employment or contract relationship commences, and to conclusively assume that all base salary, discretionary bonuses (in the targeted amount), contract payments (based on reasonable estimates of hours worked or jobs performed), commissions (based on reasonable performance), and other amounts are earned and paid for one entire year, without regard to whether any component of such compensation is discretionary or whether such employment or contract relationship is at will or for a definite term less than one year.

## 10. TRADEMARK LICENSE:

HP shall have the right, during the term of this agreement and thereafter, to disclose Client's relationship as a Client or former Client of HP and to use Client's trade names,

In re: Magellan E & P Holdings, Inc.
Ronald Sommers, Chapter 7 Trustee
November 30, 2022
P a g e | 8

trademarks, service marks and logos (collectively, "Client's Marks") for that purpose in any medium. HP shall use Client's Marks in accordance with any commercially reasonable written trademark usage policies provided by Client to HP from time to time. Nothing herein shall affect Client's ownership of Client's Marks.

11. **GOVERNING LAW; VENUE; ARBITRATION; ATTORNEY'S FEES**:

THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS (EXCEPT ITS CONFLICTS OF LAWS PRINCIPLES). THE EXCLUSIVE VENUE TO RESOLVE ANY DISPUTE RELATED IN ANY WAY TO THIS AGREEMENT OR THE SERVICES PROVIDED OR TO BE PROVIDED BY HP TO CLIENT SHALL LIE IN TRAVIS COUNTY, TEXAS. ANY DISPUTE RELATED IN ANY WAY TO THIS AGREEMENT SHALL BE RESOLVED BY BINDING ARBITRATION UNDER THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION (EXCEPT TO THE EXTENT THEY CONFLICT WITH THIS AGREEMENT). THE PREVAILING PARTY IN ANY DISPUTE RELATED IN ANY WAY TO THIS AGREEMENT SHALL BE ENTITLED TO RECOVER HIS, HER OR ITS REASONABLE ATTORNEY'S FEES AND REASONABLE OUT-OF-POCKET EXPENSES INCURRED IN THE PROSECUTION OR DEFENSE OF CLAIMS IN SUCH DISPUTE. IN THE EVENT ARBITRATION IS UNAVAILABLE TO RESOLVE A DISPUTE, HP AND CLIENT HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING ARISING IN CONNECTION WITH OR AS A RESULT OF THE ENGAGEMENT PROVIDED FOR IN THIS AGREEMENT.

12. **MISCELLANEOUS**:

If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction to be void, invalid, or otherwise unenforceable, in whole or part, the remaining terms, provisions, covenants and restrictions contained in this Agreement shall remain in effect. Amounts past due under this Agreement shall accrue interest at the rate of 18% per year, or the maximum rate allowed by law, whichever is less. Client shall pay (or if HP pays, reimburse HP for) any applicable sales, use or similar tax imposed in connection with any sale of goods or services by HP to Client. This Agreement supersedes any prior agreement, understanding, or representation between HP and Client, and can only be modified by a written document signed by both HP and Client.

# Karen Nicolaou

Managing Director, Harney Partners
Houston

## Contact

www.linkedin.com/in/karen-
nicolaou-9078522 (LinkedIn)
www.atropos-inc.com (Personal)

## Top Skills

Mergers & Acquisitions
Due Diligence
Finance

## Languages

Portuguese (Elementary)
French (Elementary)
English (Native or Bilingual)
German (Elementary)
Spanish (Native or Bilingual)
Italian (Limited Working)

## Certifications

Certified Public Accountant - State of
Texas

## Summary

Accomplished professional with long-term record of providing comprehensive financial leadership to commercial enterprises including distressed situations from start-ups to Fortune 500 companies. Hands-on experience in: (i) business valuation; (ii) claims administration & resolution; (iii) management of accounting & administrative staffs; (iv) risk management; (v) treasury; and (vi) acquisitions & divestitures, both national & international.

---

EXHIBIT C

## Experience

**Harney Partners**
Managing Director
September 2018 - Present (3 years 11 months)
Houston, TX

Turnaround, dispute resolution, interim and crisis management.

**The 1940 Air Terminal Museum**
President
2014 - Present (8 years)

**Bridgepoint Consulting, LLC**
Director
May 2017 - August 2018 (1 year 4 months)
Houston, Texas

Responsible for interim and crisis management for Bridgepoint clients including cash management, negotiations with creditors, and supervision of consulting team. Clients include companies engaged in: dangerous goods crating; restaurant supply; memory care; and staffing.

**Atropos, Inc.**
Principal
October 2001 - April 2017 (15 years 7 months)
Houston, Texas

Responsible for Atropos' long term financial performance and engagements including valuation, forensic accounting, cash management, out of court restructure and interim crisis management for clients operating in the following industry segments:

ENERGY: PDC 2002(b) & (c); Eastern 1996D et al; Drill Bit Industries, Tri-Max Industries, Inc. and Drilling Tool, Inc.; Timec, Inc., Total Safety USA, and Sterling Group Holdings.

HEALTHCARE: Careselect Group, Senior Management Associates, Goldstar Emergency Medical Services and Sterling Healthcare.

TECHNOLOGY & COMMUNICATION: Luken Communications; LCE Estate Corporation f/k/a Logix Communications Enterprises, Johnson Broadcasting, Inc. and Johnson Broadcasting of Dallas, Inc.; Hewlett Packard f/k/a Compaq Computer Corp; Daisy Tech; Sola Communications.

REAL ESTATE: NE40, John Hart Draper Estate, Cyrus II

## Complete MD Solutions, LLC
Chief Financial Officer
December 2011 - January 2017 (5 years 2 months)
Houston, Tx

Responsible for sell-side due diligence for transaction comprising seventy-five percent of corporate ownership of Complete MD Solutions, LLC. Responsible for management of the finance and accounting functions of SWHA f/k/a OGA, PLLC comprising forty physicians, seventeen separate entities, eight locations in Houston and surrounds and generating in excess of $40MM in revenue per annum. Disaggregated and restructured legal entities to mitigate litigation risk and protect practice assets while reducing debt by forty-three percent and opening the financial arm of a de novo management services organization. Selection, design and implementation of accounting information systems. Liaison with financial institutions, attorneys and other professional service providers. Developed equipment leasing facility for care center and ancillary equipment requirements. Supported sales process and integration of nineteen new physician practices into SWHA. Provided financial support for complete restructure of SWHA practices including transitioning benefits and retirement plans; employee divestiture and restructuring of physician compensation.

## Total Safety US, Inc.

3 years 5 months

Vice President (Finance, Corporate Controller, Financial Information Systems)
February 2009 - December 2011 (2 years 11 months)
Houston, TX

Responsible for direct supervision of accounts payable, payroll, treasury, financial reporting and tax departments, as well as international due diligence. Preparation of monthly, quarterly and annual financial reporting in accordance with current GAAP.  Valued acquisition intangibles in accordance with GAAP and prepared opening balance sheets for audit and financial reporting purposes . Developed training materials and coordinated training seminars for domestic CSR's. Wrote and presented a seminar on "Finance for non-Financial Managers" for operations and sales managers from the Middle East, Africa and the United Kingdom. Conducted internal audits abroad and supervised customer recovery audits domestically. Liaison for financial auditors, tax advisors and other third party professionals. Responsible for financial systems design on disparate platforms including Hyperion, Mas200 and RentalMan ERP.

Consultant
August 2008 - February 2009 (7 months)
Houston,Texas

Interfaced with key customer in resolution of contract billing intrepretation.

Johnson Broadcasting & Johnson Broadcasting of Dallas, Inc.
Strategic Financial Manager
October 2008 - April 2011 (2 years 7 months)
Houston, Texas

Responsible for management, financial advisory and consulting services relative to operating the companies during the pendency of their bankruptcy proceedings, including: case administration; cash management; preparation of MOR's and other periodic financial reporting; and coordination of auction sale of substantially all of the debtor's assets.

Clayton Biltmore / Christus Health
Interim Management
August 2007 - July 2008 (1 year)

Interim controller and internal audit compliance manager for East Texas Regional Medical Center.

Promedco Management Company, Inc.

Strategic Financial Manger
2001 - 2007 (6 years)

Designed and implemented financial reporting mechanism to ensure compliance with court approved cash collateral order serving as liaison between the company, the secured creditors and their financial consultants. Managed human resources, accounting, tax and insurance aspects of the liquidation operation. Participated in court-ordered mediations and negotiations with affiliated physician clinics, the IRS and the Department of Justice. Performed claims review and analysis for court filings. Oversaw all aspects of the dissolution and wind down of approximately thirty-six corporations in a multi-state environment.

Physicians Resource Group
Controller/Chief Financial Officer
July 1998 - December 2005 (7 years 6 months)

Managed the accounting, tax and treasury function for a publicly traded physician's practice management group providing services to 137 practices across the country. Developed the review plan, negotiated the contract for and oversaw the execution of a third party accounting review. Assisted in the selection of independent auditors and managed the audit relationship. Developed retention and extended stay packages for staff and executive management team. Created a comprehensive practice model used as the basis for $160mm asset sale transaction, the calculation of accounting write downs and reserves in accordance with GAAP, and tax planning for the 1998 and 1999 calendar years. Negotiated asset sales with eight physician practices and supported the negotiations of operations personnel with the remainder. Assisted in the design of a tax model maximizing the 1998 net operating loss for carry back purposes while minimizing the effect of current sales on 1999 taxable income. Managed the negotiation of corporate insurance renewals and the due diligence process for AmSurg $100mm purchase of PRG's interest in thirty-four ambulatory surgical centers.

MISSION CRITICAL SOFTWARE, INC.
Controller
November 1996 - June 1998 (1 year 8 months)

Managed the accounting department for a start-up software development company. Grew the company from nineteen employees operating in five states to ninety-two employees operating in eight states and four countries. Participated in various levels of business startup including: registering the company to do business in multiple states; setting up payroll and

employee agreements for the UK and Canada; outsourcing payroll and corporate procurement services. Prepared tax filings including: state sales tax returns; withholding reports and state unemployment returns; federal year end withholding and unemployment reports, and informational returns. Created closing packages for monthly financial statement preparation; wrote accounting procedures and set policies; managed the tax and audit relationships with big six accounting firm; prepared the first corporate budget. Trained and supported the sales administrative staff.

## K G Nicolaou, CPA
Consulting Accountant
1993 - 1996 (3 years)

The Gem Agency. Houston, TX.  Provided cash flow analysis including NPV calculations. Prepared presentation graphics and set up macros using Word and Excel.

Newman Martin &amp; Buchan. London, U. K. Calculated policy adjustments and presented to domestic underwriters for agreement and payment. Provided program reconciliation and problem resolution.

San Francisco Reinsurance. Novato, CA. Researched and explained the nature and effect of negative reserves on the reinsurance program. Resolved outstanding issues pertaining to claim payments, policy adjustments, etc.

International Reinsurance. Houston, TX. Analyzed staffing requirements and determined minimum resources required to service the program. Trained staff and rewrote computer programming including manual. Provided technical support, research, and analysis services to program participants.

Nash Corporation. Denton, TX.

Rebuilt accounts receivable files. Debugged accounting programs. Trained front office staff. Provided real estate development cost allocations; accounting system and coding structure set up; tax write up, research and estate planning.

## Energy Insurance International, Inc.
Controller/VP Technical
1988 - 1993 (5 years)

VP Technical.  Designed and implemented a computerized processing system for internationally underwritten reinsurance program. Managed claims handling and processing of approximately US $200 million in recoveries through Lloyds of London and domestic reinsurance markets. Developed presentation formats for executive sales team. Advised and assisted staff of 74 with special projects and problem resolution.

Controller.  Managed all accounting and treasury functions for the insurance brokerage firm writing approximately US $300 million in premium per annum. Designed and implemented a three-year forecasting and budgeting plan. Prepared annual stock valuation. Prepared five-year combining statements for business combination accounted for as a pooling of interests. Served on the computer, word processing and re-modeling committees. Directed the specification and implementation of corporate-wide computer network and support applications

Darlco
Controller
1981 - 1988 (7 years)

———

# Education

## The University of Texas at Austin

BA, Accounting/Management/Spanish · (1975 - 1979)